**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WILLIAM FRANKLIN MCCOY, *et al.* } | |
| *Plaintiff(s)* } | |
| } | |
| v. } | |
| } | CIVIL ACTION NO. H-03-3648 |
| HOMESTEAD STUDIO SUITES HOTELS } | |
| and HVI, INC. d/b/a HOMESTEAD } | |
| STUDIO SUITES HOTELS, } | |
| *Defendant(s)* } | |

**MEMORANDUM OPINION AND ORDER
<u>GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Pending before the Court are Plaintiffs' motion for summary judgment (Doc. 48) and Defendants' motion for summary judgment (Doc. 49). After considering the motions, the parties' briefs, and the applicable law, the Court **ORDERS** that Defendants' motion is **GRANTED-IN-PART and DENIED-IN-PART** and Plaintiffs' motion is **DENIED**. Final judgment is entered in favor of Defendants with respect to all of Plaintiffs' claims. Defendants' motion for summary judgment on their Texas Deceptive Trade Practices Act counterclaim, however, is denied, and that claim is dismissed with prejudice.

**I.    BACKGROUND AND RELEVANT FACTS**

This is a civil rights action in which the Plaintiffs, practitioners of a spiritual belief system known as Falun Gong, claim they were unlawfully discriminated against by the owners and operators of a hotel. In October 2002 Jiang Zemin, the former President of the People's Republic of China ("PRC"), visited Houston and stayed at the Intercontinental Hotel. Plaintiffs allege that when word of Jiang's visit spread they made plans to travel to Houston to engage in protests against Jiang. In particular, Plaintiffs made reservations at a Homestead Studio Suites ("HSS") hotel located in the Galleria area of Houston, adjacent to the Intercontinental. This HSS hotel was owned and operated by Defendant BRE/TX Properties L.P. d/b/a Homestead Studio Suites (hereinafter "Homestead").[1] Prior to Jiang's visit, Homestead entered into a contract

---

[1] In addition to BRE/TX Properties, L.P. d/b/a Homestead Studio Suites, the Defendants named in this consolidated action are: "BRE/Homestead Village L.L.C. d/b/a Homestead Studio Suites"; "BRE/TX Properties L.L.C. d/b/a Homestead Studio Suites Hotels"; and "BRE/TX GP Properties L.L.C. d/b/a Homestead Studio Suites." The parties have agreed that the latter two defendants should be dismissed from this action. *See* Doc. 49 at 10 and Doc. 55 at 7. The parties dispute, however, whether or not "BRE/Homestead Village L.L.C. d/b/a Homestead Studio Suites" is a proper defendant. Because the Court finds that Defendants are entitled to summary judgment on the merits of Plaintiffs' claims, the Court need not reach the more technical issue of whether this corporate entity is a proper

with a representative of the PRC to rent a large number of its rooms in the Galleria property to the PRC for the duration of Jiang's visit, consciously overbooking itself. In order to make room for the PRC, Homestead implemented what it calls its "walk policy": if it could no longer provide a room to a guest who had a reservation, it would "walk" (*i.e.*, transport) the guest to another Homestead hotel, where the first night of the guest's stay is complimentary. If another Homestead hotel is not available, Homestead pays for the first night of the guest's stay at a comparable hotel. In either case, Homestead provides a free telephone call, and transportation, if needed.[2] Plaintiffs' claims are based on Homestead's decision to rent its rooms to the PRC and, consequentially, to "walk" them during Jiang's stay at the Intercontinental.

The basic facts underlying this case are not in dispute and / or are established by uncontroverted evidence. On 02 September 2002, the head of security at the Intercontinental contacted Leonard Arsola ("Arsola"), the general manager of Homestead's Galleria property, about coordinating security efforts between the hotels in connection with Jiang's visit.[3] On 20 September 2002, an Intercontinental employee contacted Arsola and informed him that the PRC was interested in occupying rooms at Homestead's Galleria property, and would do so at a premium rate.[4] On 23 September 2002, Arsola and Tim Treadwell ("Treadwell"), then Homestead's Regional Director of Operations, spoke with Xu Kuang ("Xu"), a representative of the PRC, about occupying rooms at the hotel.[5] Xu stated that the PRC wished to occupy the entire hotel, if possible, and confirmed that the PRC would pay a premium rate for the rooms.[6] Subsequently, on 11 October 2002, Xu signed a contract with Homestead on behalf of the PRC to occupy rooms at Homestead's Galleria property during the week of Jiang's visit. Specifically, the PRC contracted

---

defendant. For the sake of simplicity, the Court will refer to both remaining Defendants throughout this Order as "Homestead."

[2]*Arsola Affidavit* (Doc. 49 Ex. 2) at ¶ 8.

[3]*Id.* at ¶¶ 2,4. Plaintiffs object to Arsola's testimony about this conversation, arguing that it constitutes inadmissible hearsay. The Court finds that none of the contested testimony was offered for the truth of the matter asserted, and thus it overrules Plaintiffs' objections. Ultimately, however, the point is moot: as the rest of this Order makes clear, none of the testimony to which Plaintiffs object is necessary to resolve any of the issues in this case. The Court mentions Arsola's conversation with Intercontinental's security chief solely as background.

[4]*Id.* at ¶ 6.

[5]*Id.* at ¶ 7; *Treadwell Affidavit* (Doc. 49 Ex. 1) at ¶ 4.

[6]*Id.*

to occupy 76 rooms on October 22, 2002; 53 rooms on October 23, 2002; 53 rooms on October 24, 2002; and 50 rooms on October 25, 2002–all at a room rate of ninety-nine dollars ($99.00) per night.[7]

In order to free up these rooms for the PRC, Homestead implemented the "walk" policy described above. According to Treadwell and Arsola, Homestead focused on walking persons scheduled for short-term stays, so as to maintain the maximum revenue intake.[8] Specifically, Homestead began notifying those persons who were not already checked in to the Galleria property as hotel guests, who had reservations during the week of October 20, 2002 for less than a seven day stay, and whose telephone contact information was on file, that they were being "walked."[9] Some of these individuals, upon being told by Homestead that they were being walked, identified themselves as practitioners of Falun Gong and accused the hotel of walking them for that reason.[10] The alternative arrangements offered by Homestead to Plaintiffs as part of the "walk" policy were rejected.

Plaintiffs filed the lawsuits that are the subject of this consolidated action in September 2003 and July 2004. Plaintiffs are asserting federal civil rights claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000a, and 42 U.S.C. § 1985(3). Plaintiffs are also asserting state law claims under the Texas Deceptive Trade Practices Act ("DTPA") and claims for breach of contract. Both sides have filed motions for summary judgment, and the issues have been fully briefed. The motions are ripe for ruling.

## II.     LEGAL STANDARD

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts

---

[7] *Treadwell Affidavit* (Doc. 49 Ex. 1) at ¶ 10.

[8] *Id.* at ¶ 6; *Arsola Affidavit* (Doc. 49 Ex. 2) at ¶ 11.

[9] *Id.*

[10] *Arsola Affidavit* (Doc. 49 Ex. 2) at ¶ 11.

3

and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more that simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

## III.   ANALYSIS

Plaintiffs have failed to marshal any evidence demonstrating that Defendants discriminated against them on any unlawful basis. In particular, Plaintiffs have failed to establish that Defendants attempted to "walk" them because of their race or religion. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000a, and 42 U.S.C. § 1985(3). The Court further finds that Defendants are entitled to summary judgment on Plaintiffs' state law claims under the Texas Deceptive Trade Practices Act ("DTPA") and for breach of contract. Defendants' DTPA counterclaim, however, is dismissed with prejudice.

### A.   Claims Under 42 U.S.C. § 1981

Plaintiffs allege that Homestead discriminated against them by terminating their reservations on the basis of Plaintiffs' "race, national origin and/or religion" in violation of Section 1981. To establish a Section 1981 claim, a plaintiff must prove the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute.[11] The enumerated activity ostensibly implicated in this case is the right to make and enforce contracts.

Plaintiffs' claims fail for two reasons. First, assuming *arguendo* that Falun Gong qualifies as a "religion," and that it is on this basis that plaintiffs press their § 1981 claims, it is well settled that § 1981 does not allow a plaintiff to predicate an action based on religious discrimination.[10]

Next, to the extent Plaintiffs' claim are based on racial discrimination, Plaintiffs have failed to demonstrate that they were in fact discriminated against. As an initial matter, Plaintiffs' lawsuit never specifically identifies the "national origin" or "race" of each Plaintiff. Rather, Plaintiffs' lawsuit refers only to some Plaintiffs as having "identifiably Asian names."[11] Assuming *arguendo* that the Plaintiffs with the "identifiably Asian names" are of Chinese national origin, Plaintiffs

---

[11]*Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).

[10]*Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004).

[11]*Second Amended Complaint* (Doc. 31) ¶¶ 24, 25.

cannot show these individuals were denied accommodations made available to guests outside of their protected classes. It is undisputed that Homestead supplied rooms to guests of the PRC, many if not all of whom were of "Asian" race or Chinese national origin. Nor have Plaintiffs shown that the alternative accommodations Homestead offered to them at Willowbrook, the Medical Center, and the Wellesley Inn were any different than the alternative accommodations offered to persons who were walked and who were not members of Asian race or Chinese national origin. For these reasons Plaintiffs' national origin and race claims fail.

Because Plaintiffs cannot assert religious discrimination claims under § 1981, and because Plaintiffs cannot demonstrate that Defendants discriminated against them on the basis of race or national origin, Defendants are entitled to summary judgment on Plaintiffs' Section 1981 claim.

**B.    Claims Under 42 U.S.C. § 1982**

Plaintiffs allege that Homestead purposefully discriminated against them on the basis of their race by canceling their reservations in violation of Section 1982. A plaintiff establishes a *prima facie* case under § 1982 by proving that he or she: (1) is a member of a racial minority; (2) applied for and was qualified to rent or purchase certain property or housing; (3) was rejected; and (4) the housing or rental property remained available thereafter.[12] Plaintiffs cannot satisfy the fourth element of their claim, as there is no dispute that the rooms did not remain available but were instead rented to the PRC at a higher rate. Furthermore, Plaintiffs have failed to demonstrate that Defendants "had an intent to discriminate on the basis of race."[13] Plaintiffs' race discrimination claims under § 1982 suffer from the same essential defects as their § 1981 claims because Homestead offered the rooms to the guests of the PRC, who were of the same race as Plaintiffs. For these reasons, Defendants are entitled to summary judgment on Plaintiffs' § 1982 claims.

**C.    Claims Under 42 U.S.C. § 2000a**

---

[12]*Durham v. Red Lake Fishing & Hunting Club, Inc.*, 666 F. Supp. 954, 956-57 (W.D.Tex. 1987).

[13]*Brown v. Atlanta Life Ins. Co.*, 2004 WL 1555281 at *3 (E.D.La.) (quoting *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802 (1973))**.**

6

Plaintiffs allege that Defendants' "cancellation" of their reservations violated 42 U.S.C. 2000a[14] because it "interfered with Plaintiff's right to enjoy the services of hotel without discrimination on the basis of race, color, religion, or national origin."[15] In the public-accommodations context, similar to claims under §§ 1981 & 1982, a plaintiff establishes a *prima facie* case of discrimination by showing that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class.[16]

The Court has already discussed Plaintiffs' failure to establish even a *prima facie* case of race or national origin discrimination. Accordingly, Plaintiffs' § 2000a claim can proceed, if at all, only as a claim of discrimination based on religion. Assuming, *arguendo*, that Falun Gong qualifies as a religion, the Court finds that Plaintiffs have failed to marshal any evidence demonstrating that Defendants in fact discriminated against any one of them on the basis of religion. Specifically, Plaintiffs have failed to marshal any evidence to rebut Homestead's assertion that it walked *all* short-term stay reservation holders, regardless of whether or not they were Falun Gong practitioners. The Court notes the following:

> (1) The records produced by Plaintiffs in discovery reveal that the first day any Plaintiff was scheduled to check into the Galleria property was October 21, 2002, and the maximum scheduled stay for any Plaintiff was four days. Accordingly, Plaintiffs were all short-term reservation holders. The records produced by Plaintiffs also show that some Plaintiffs' per night room rates were as low as forty-four Dollars.[17]
>
> (2) In implementing the "walk policy," individuals who had identified themselves as Falun Gong members, as well as persons who had *not* identified themselves as members of Falun Gong, were offered alternative accommodations at Homestead's

---

[14]Section 2000a states, in pertinent part, that: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

[15]*McCoy* Second Amended Complaint ¶ 46.

[16]*See, e.g.*, *LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1370 (S.D. Fla. 1999).

[17]Doc. 49 Exs. 3A & 3B.

> Willowbrook property, on equal terms: the first night's lodging at no cost, a free long distance telephone call, and transportation back to the Galleria area.[18]
>
> (3) Plaintiffs have offered no evidence to establish that Defendants had any knowledge whether or not particular individuals being "walked" were Falun Gong practitioners. Plaintiffs have offered nothing more than the assertion that "[i]t is undisputed in this case that many of the plaintiffs were identifiable by their names and appearances as Asians."[19] It is also undisputed, however, that the rooms which Plaintiffs sought to occupy were subsequently occupied by *other "Asians"*–namely, the members of the PRC's party.

Nor, furthermore, have Plaintiffs marshaled any evidence to demonstrate that Defendants' "walk" policy has a disparate impact on Falun Gong practitioners, or to rebut Defendants' contention that the "walk" policy is standard in the hotel industry.[20] Accordingly, regardless of whether it is viewed under disparate treatment or a disparate impact theory,[21] Plaintiffs' § 2000a claim must fail.

**D.     Claims Under 42 U.S.C. § 1985(3)**

Similarly, Plaintiffs' Section 1985(3) claims are defective and must be dismissed. In order to establish a claim under Section 1985(3), a plaintiff must prove: (1) a conspiracy between two or more individuals; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States.[22] Plaintiffs allege that: "a conspiracy existed between the Defendants and members...of the Chinese government"; that "[t]he communication between Defendants and members...of the Chinese government resulted in an agreement to cancel the reservations of anyone possibly associated with the Falun Gong"; and that "[t]he conspiracy was for the purpose of depriving...the Plaintiffs of the equal protection of the laws, specifically their rights under 42 U.S.C.

---

[18]*Arsola Affidavit* (Doc. 49 Ex. 2) at ¶¶ 11-12.

[19]Doc. 62 at 2.

[20]*Arsola Affidavit* (Doc. 49 Ex. 2) at ¶ 8; *Treadwell Affidavit* (Doc. 49 Ex. 1) at ¶ 7.

[21]*See Arguello v. Conoco, Inc.*, 207 F.3d 803, 813 (5th Cir. 2000) ("Neither the Supreme Court nor this court has addressed the question of whether disparate impact claims are cognizable under Title II. Furthermore, the law in the other circuits is generally unclear as to whether disparate impact claims are recognized under Title II.").

[22]*Deubert v. Gulf Fed. Savings Bank*, 820 F.2d 754, 757 (5th Cir. 1987).

§§ 1981, 1982 and 2000a."[23] Moreover, Plaintiffs allege that "Defendants acted in furtherance of the conspiracy by canceling the reservations of Plaintiffs."[24]

The only type of conspiracy actionable under Section 1985(3) is one motivated by racial animus.[25] As noted above in the discussion of Plaintiffs' §§ 1981 & 1982 claims, Plaintiffs have failed to make out even a *prima facie* case of racial discrimination. The crux of Plaintiffs' case is that they were discriminated against because they were Falun Gong practitioners. Because Falun Gong is not a race, and because Plaintiffs have marshaled absolutely no evidence that any Defendant was motivated in any way by racial animus, Plaintiffs' § 1985(3) claim must fail.

**E.     Breach of Contract Claim**

To prevail on a breach of contract claim in Texas a plaintiff must prove (1) an enforceable contract; (2) the tender of performance; (3) breach by the defendant; and (4) an injury caused by the defendant.[26] Assuming *arguendo* that Plaintiffs' reservations constitute "contracts" with Homestead, Defendants are entitled to summary judgment because Plaintiffs have failed to marshal any evidence demonstrating that they suffered any damages or rebutting Defendants' claim of substantial performance.[27] The undisputed evidence establishes that Defendants offered to provide Plaintiffs with comparable accommodations at a nearby location; to provide free transportation to Plaintiffs to and from the alternative lodgings; and to assume the cost of Plaintiffs' first night stay at the alternative locations. Plaintiffs refused Defendants' offer. Plaintiffs have not demonstrated to this Court in any way how they were damaged by Defendants' alleged breach of contract. Nor have Plaintiffs offered any substantive response to Defendants' claim of substantial performance. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim.

---

[23]*Second Amended Complaint* (Doc. 31) ¶¶ 49-50.

[24]*Id.*

[25]*Word of Faith World Outreach Ctr. Church v Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) ("We decline the Church's invitation to extend the reach of section 1985(3) to include conspiracies motivated by religious, as opposed, to racial animus. The district court properly dismissed this claim.").

[26]*Southwell v. University of the Incarnate Word,* 974 S.W.2d 351, 354-55 (Tex.App.-San Antonio 1998, pet. denied)**.**

[27]*See Smith v. Smith*, 112 S.W.3d 275, 278-79 (Tex.App.-Corpus Christi 2003) (discussing Texas law regarding substantial performance as defense to breach of contract claim).

### F.        Plaintiffs' DTPA Claim and Defendants' Counterclaim

Plaintiffs allege that "Defendants' actions were unconscionable, and were the producing cause of economic damages and emotional anguish."[28] To prove their claims under Section 17.50(a)(3) of the DTPA, Plaintiffs must establish that they were consumers and that an unconscionable act by Defendants was the producing cause of damages to them.  To prove that an act was unconscionable, Plaintiffs must show that the act resulted in unfairness that was glaring, noticeable, flagrant, complete and unmitigated.[29] Furthermore, an unconscionable act is one that, to the consumer's detriment, takes advantage of the consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.[30]

As noted above, the uncontroverted evidence establishes that Homestead's "walk" policy is considered standard in the hotel industry.[31] Homestead made three attempts to satisfy Plaintiffs with respect to the alternative accommodations offered.  Homestead offered to pay for the first night's stay, provide a free phone call, and provide free transportation.  Plaintiffs rejected these offers.  The Court finds that Plaintiffs have failed to marshal any evidence that could prove Defendants acted unconscionably.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' DTPA claim.  The Court is not convinced, however, that Plaintiffs' DTPA claim was groundless or made in bad faith or for the purposes of harassment.  Accordingly, Defendants' motion for summary judgment on their DTPA counterclaim is denied.  The counterclaim is dismissed with prejudice.

### IV.      CONCLUSION

For the reasons set forth above, the Court **ORDERS** that (1) Defendants' motion for summary judgment is **GRANTED-IN-PART and DENIED-IN-PART** and (2) Plaintiffs' motion for summary judgment is **DENIED**.  Because Defendants are entitled to summary judgment with respect to all of Plaintiffs' claims, and because the Court has conclusively determined that Defendants' sole counterclaim must fail, the entry of final judgment in this action is appropriate. Final judgment is entered in favor of Defendants with respect to all of Plaintiffs' claims, and

---

[28] *Second Amended Complaint* (Doc. 31) ¶ 54.

[29] *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001).

[30] *Id.*

[31] *Arsola Affidavit* (Doc. 49 Ex. 2) at ¶ 8; *Treadwell Affidavit* (Doc. 49 Ex. 1) at ¶ 7.

Plaintiffs are entitled to final judgment in their favor with respect to Defendants' counterclaim. All relief not specifically granted herein and all other pending motions are denied.

      **SIGNED** at Houston, Texas, this 11th day of May, 2005.

                                              UNITED STATES DISTRICT JUDGE